UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID C. FOIGHT,

       Plaintiff,                            Case No.  1:15-CV-0566

v.                                           HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff David Foight seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).

It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.23, 42.) He obtained a bachelor's degree in automated manufacturing, and was previously employed as an application engineer for manufacturing. (PageID.43–44, 74.) Plaintiff applied for benefits on January 30, 2013, alleging that he had been disabled since May 19, 2009.[1] (PageID.81, 136–44.) Plaintiff claims he cannot work due to difficulties with emotional control, cognitive deficits, and dysarthria that stem from an October 1996 car accident. (PageID.81, 231.) Plaintiff's application was denied on March 21, 2013, after which time he requested a hearing before an ALJ. (PageID.95–107.) On December 12, 2013, Plaintiff appeared with his counsel before ALJ Paul W. Jones for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.37–79.) In a written decision dated February 7, 2014, the ALJ

---

[1] Plaintiff originally claimed a disability onset date of October 6, 2000. At the hearing this date was amended to May 19, 2009. (PageID.137, 154.)

determined that Plaintiff was not disabled. (PageID.23–36.) On April 10, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.17–21.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

Plaintiff's insured status expired on September 30, 2009. (PageID.81). Accordingly, to be eligible for DIB under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four.

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Jones determined that Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his amended alleged disability onset date. (PageID.28.) At step two, the ALJ determined that Plaintiff had the following severe impairments: (1) traumatic brain injury (TBI); (2) slight foot drag; (3) organic mental disorder; (4) affective disorder; and (5) anxiety disorder. (PageID.28.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.28–29.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b), except he must avoid all exposure to hazards such as the operational [sic] and control of moving machinery and unprotected heights; in simple, routine, and repetitive work; with occasional changes in the work setting.

(PageID.30.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.32.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following jobs as representative of work that Plaintiff could perform: light cleaner (377,000 jobs in the nation), assembler (445,000 jobs in the nation), and sorter/packager (320,000 jobs in the nation). (PageID.75.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.33–34.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from his onset date through the date of the decision. (PageID.34.)

**DISCUSSION**

On August 17, 2015, the Court entered a Notice in this case regarding the filing of briefs. The Notice, in relevant part, stated that "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (PageID.348.) Plaintiff's brief contains only a broad statement that the ALJ's decision is unsupported by substantial evidence based on the whole record, and accordingly falls short of the Statement of Errors requirement.[3] (PageID.376.) Because Plaintiff's counsel has failed to provide a Statement of Errors, the Court has reviewed Plaintiff's brief and gleans the following claims of error:

1. The ALJ erred in failing to classify Plaintiff's bipolar disorder as a severe impairment;

2. The ALJ erred in failing to give controlling weight to the opinion of Dr. Roy Meland; and

3. The opinion of Dr. Ashok Kaul is unreliable.

**1.**

Plaintiff contends that the ALJ failed to include his bipolar disorder as a severe impairment. (PageID.379.) A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment at step two of the sequential evaluation, the ALJ must continue with the remaining steps in the evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can

---

[3]Plaintiff's counsel is advised that future briefs that fail to provide a Statement of Errors may be stricken.

consider such non-severe conditions in determining the claimant's RFC. *Id.* "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). Here, the ALJ found that Plaintiff had a number of severe impairments. This included Plaintiff's traumatic brain injury. (PageID.28.) The Court notes that although Plaintiff's bipolar disorder was not specifically identified, the record evidence consistently referenced it as being caused by, or secondary to, Plaintiff's traumatic brain injury which was determined to be a severe impairment. (PageID.28, 215, 244.) Accordingly, Plaintiff's claim of error will be denied.

**2.**

On November 26, 2013, Dr. Roy Meland, Plaintiff's treating psychiatrist, filled out a Medical Source Statement regarding Plaintiff's mental abilities. (PageID.355–37.) The worksheet consisted of check boxes and space for the physician to provide a few words in support of his opinion. Among other things, Dr. Meland opined that Plaintiff was mildly limited regarding his ability to understand, remember, and carry out simple instructions. He was extremely limited, however, regarding his ability to make judgments on simple work related decisions.[4] (PageID.355.) Dr. Meland also found that Plaintiff was extremely limited regarding his ability to interact appropriately with the public, supervisors, and co-workers, and in responding appropriately to usual work situations and changes in a routine work setting. (PageID.356.) Although Plaintiff claims that the ALJ "ignored" this opinion, Plaintiff admits in his brief that the ALJ did discuss the opinion. (PageID.31, 380.) To the extent that Plaintiff argues the ALJ failed to accord the opinion sufficient weight, the Court disagrees.

---

[4]The worksheet defined a mild limitation as one where the claimant can generally function well, but is slightly limited. On the other hand, an extreme limitation is one where there is no useful ability to function. (PageID.355.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (*citing Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). This requirement "'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff's argument regarding Dr. Meland's opinion is not a model of clarity. It appears that Plaintiff is arguing he had "limited insight" into own impairments, and accordingly is more limited than he had claimed. (PageID.371.) Plaintiff apparently faults the ALJ for "relying upon the claimant's self reports of progress and success in functioning." (PageID.380.) It is clear why Plaintiff would argue such. At the hearing, for example, Plaintiff testified that he could not work as a housekeeper not because of any limitations, but because he thought such a position was "beneath" him. (PageID.77.) But Plaintiff points to no authority that would prevent the ALJ from noting such a statement is inconsistent with the limitations provided by Dr. Meland.

In any event, while the ALJ did mention Plaintiff's daily activities as a reason to discount the opinion, he also noted that Dr. Meland's opinion was inconsistent with the doctor's treatment notes as well as clinical reports. On March 6, 2008, Dr. Meland noted that Plaintiff's mental state was "generally stable. It does not appear that he will be will returning to the work place as at this point it does not appear that he has enough external pressures or stimulation to engage in meaningful work outside the home." (PageID.261.) On February 3, 2009, Plaintiff was described as doing well on his current medication regime. He was able to control his anxiety. (PageID.223–24.) On November 19, 2009, Plaintiff appeared in a "prosocial manner." (PageID.228.) On May 11, 2010, Plaintiff was described as having "maintained consistency of mood and general behavior" and his mood was "quite good." (PageID.321.) On June 10, 2010, Plaintiff was described as having only "mildly to moderately impaired cognitive-communication abilities." (PageID.320.) As the ALJ noted, the above notes are inconsistent with the extreme restrictions later authored by Dr. Meland. In sum, the ALJ provided good reasons, supported by substantial evidence for giving less than controlling weight to Dr. Meland's opinion.[5]

---

[5] Elsewhere in Plaintiff's brief it appears that Plaintiff argues the ALJ erred by discounting Dr. Meland's opinion because it was rendered after the date last insured. (PageID.383–84.) But there is no indication that the ALJ

Finally, to the extent that Plaintiff argues the ALJ "played doctor" with the evidence in discounting Dr. Meland's opinion, the Court disagrees. It is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians. *See Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (stating that "the ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence");  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) ("The Commissioner's determination must be based on testimony and medical evidence in the record. And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

It appears to the Court that, based on Dr. Meland's inconsistency between the treatment his treatment notes and his later opinion, the ALJ inferred that Plaintiff was not as limited as alleged. The Court finds no reason to disturb the ALJ's determination on the ground that he "played doctor." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The record reflects that the ALJ articulated contradictions among the medical records, Plaintiff's testimony, and other evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Accordingly, Plaintiff's claim of error will be denied.

### 3.

Plaintiff's remaining claim is difficult to understand. Plaintiff apparently argues that the opinion of Dr. Ashok Kaul, an agency consultant, was unreliable because he did not have the opportunity to review the entire record. (PageID.381–82.) The ALJ noted that Dr. Kaul had found there was "insufficient evidence" to evaluate Plaintiff's condition. (PageID.83.) The ALJ gave this

---

did so here. The ALJ mentioned that Dr. Meland indicated his opinion was comprehensive, dating from 1996 through the present. (PageID.31.) The ALJ made no mention that he was giving the opinion less weight because it was dated after Plaintiff's date last insured.

9

opinion only "little weight" however, so it unclear how Plaintiff alleges he was harmed.[6]  In any event, "[w]hen an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal quotation marks omitted). Here, the ALJ considered the later developments in the record that included, among other things, Dr. Meland's opinion, and thus such an indication is present.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision will be **AFFIRMED.**  A separate judgment shall issue.


Dated:  August 4, 2016                              /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE

---

[6]The Commissioner notes that the ALJ did not discuss the entirety of Dr. Meland's opinion, but argues that any error is harmless. (PageID.398–99.)  This claim was not raised by Plaintiff, however, and thus there is no need to address it as Plaintiff has waived such an argument.